Thayne Somerville, Petitioner, Hoopa Valley Tribe I'd also like to briefly acknowledge the presence of the Hoopa Valley Tribal Chairman and members of the Tribal Council who have traveled here from California to attend the hearing today. On re-hearing, FERC made a legal determination that it could not find waiver of state's Section 401 certification authority unless one full year had passed from the date of a certification application. This was an erroneous legal interpretation of the Clean Water Act that is not entitled to deference in this court. Section 401 provides that state certification authority shall be waived if a state refuses or fails to act within a reasonable period of time, which shall not exceed one year. So while the Act sets an outer maximum limit of one year, it does not preclude the Federal Licensing Agency from making a finding of waiver prior to the expiration of one year. Based on this erroneous legal interpretation of the Clean Water Act, FERC ended its analysis at that stage because in this case one year had not passed from the date of any given certification application. It found that the letter of the statute, that the actual language of the Clean Water Act, precluded it from finding waiver in this case despite its significant concerns that it was being deprived of its federal licensing jurisdiction and despite that the conduct of the states and the licensee violated the spirit of the Clean Water Act. But it was its erroneous legal interpretation that made it stop its analysis without actually evaluating whether or not the underlying conduct did amount to a waiver within a reasonable period of time. Does your argument in any way depend upon the successive applications and the agreement to have such successive applications, or is it independent of that? Our agreement focuses on the state's commitment to not process the pending application that was before it as well as future applications. In addition, they did allow the licensee to submit a one-page letter each year that simultaneously purported to withdraw and resubmit the applications. But the focus here is... So the applications, in fact, were identical year after year, right? I'm not even sure there was an actual application. It was nothing more than a letter, a one-page letter that said we withdraw and resubmit. Please deem it withdrawn and resubmitted. I'm interested in your invocation of the spirit of Section 401. We're not too good at discerning spirits here, but we spend more of our time... Most of us aren't. Yeah, most of us. We spend most of our time looking at language of the text. And what is there that violates the language of the text in this process? It was FERC's interpretation of the letter of the Act. If you look in the order on rehearing in paragraphs 20 to 23 on the order of rehearing, it was clear that they felt the language of the Act precluded them from making a finding of waiver unless one year had passed. That's not what the language of the Clean Water Act actually says. The language of the Clean Water Act says that waivers shall be found if there's a failure or refusal to act within a reasonable period of time which shall not exceed one year. So our argument is not based on the spirit of the Clean Water Act. Our argument is based on the language of the Act itself and the fact that FERC misinterpreted it. Your argument, I hear you trying to make a more case-specific argument, but I'm having trouble seeing a more narrow argument that doesn't depend on a determination that it violates the Federal Power Act to condone the withdraw and resubmit. You are making the argument that it violates the Federal Power Act for FERC to fail to find that the states have waived after their 401 certification application has been pending for a year and that that can't be extended through this ruse of withdraw and resubmit. That is part of your argument or that is not? It was part of the third issue in our case of whether FERC had essentially abdicated its licensing authority, in this case under the Federal Power Act, by not reasserting itself into the case which could have been done either through a finding of waiver under Section 401 or by dismissing the certification application for lack of timely, diligent processing. But our Clean Water Act argument is independent of the Federal Power Act. What we're saying is that FERC misinterpreted the Clean Water Act by finding that it could not make a declaration of waiver unless one year had passed. But by its own regulations, it defines a reasonable period of time as being one year, doesn't it? FERC regulations track the Clean Water Act in the sense that a waiver will be deemed to have been found if one year passes, and that's not controversial. I mean, that's consistent with the statute. But doesn't FERC, by its own regulations, defines a reasonable period of time to mean one year? FERC regulations… So isn't your argument really they need to change their regulations? I don't think so. I don't…FERC regulations do not… Well, they have a regulation that says a reasonable period of time is one year. I don't believe… I don't think you've challenged that, have you? The FERC regulations do not specifically say that in all cases a reasonable period of time will be one year. What it says is that waiver will be deemed to have been found if one year passes, and that's not controversial. If one year passes, there's no dispute that waiver will be found. We do not read the FERC regulations as precluding FERC from implementing its authority. Maybe I'm misreading the regulation. We'll ask the FERC attorneys to do it. But I thought they defined…I thought their own regulations defined a reasonable period of time as being one year. Well, if they did, that's not what they were relying on in the order on rehearing. They didn't rely on the regulation. I don't read the regulation to preclude them from making a finding that the waiver occurred within a reasonable period of time. I'm not sure why… Excuse me. Go ahead. I feel like I've done more talking to you. Go ahead. So I'm not sure why we're struggling over whether it's less than a year or a year. This has been pending many, many years. And so the FERC is acting like its hands were tied. But even if you read the regulation, which says in the affirmative that it will be deemed to have waived if they haven't denied by one year, but it doesn't say that they can't do less. I understand that that's your position. But even just taking it to be, well, the routine time, the time when FERC is comfortable making the determination is after a year because, after all, everybody wants to know how much time they have to work with. And if FERC comes in in some cases after six months and in other cases after three and in other cases after nine, people don't know how much time they have to work with. But why are we even talking about FERC's authority to intervene within the year? Because it hasn't intervened after a year or even after two years or ten years. So isn't the question whether FERC should have asserted some supervision over this process because the states had not acted within the time that the Clean Water Act requires them to act? We fully agree with that. And we raised a separate claim to the Clean Water Act claim in the Federal Power Act. And we believe this entire, that FERC had effectively advocated its authority over the relicensing by not acting, by letting this process go forward. We agree with what you're saying. But that's a different, there are two separate arguments. One is based on the Clean Water Act and one is based on the Federal Power Act. That goes back to really what I was asking at the very beginning, is you are then in that instance relying on attacking of the period involved in the counterfeit multiple applications that we have here, are you not? We believe this entire process is absolutely inconsistent with the Federal Power Act and the federal scheme. I'm not sure that I'm hearing you begin an answer to the question I'm trying to ask. I'm not sure we're understanding each other. Is this case dependent upon their refiling of those, is your argument dependent upon the refiling of the application through those letter applications so that we would have the period for one year exceeded, greatly exceeded, if we do consider this all as one application for purposes of the litigation? The Clean Water Act argument is not based on the success of applications, except that we think that FERC can evaluate the overall context of it when determining whether or not a reasonable period of time has passed within the one year from the certification application. For example, if this was the tenth. So then you would say that FERC's error lies, before we ever get to FERC's final decision, lies in relying upon an interpretation of the act that says they can't do that. They're saying that they could not look at context involving the period here because it ratcheted to a stop at one point and started back up a day later rather than being a continuous 365 days. You're saying that's where the error lay within their interpretation of the statute and relying on that interpretation. That's correct, Your Honor. Okay, thank you. And I don't believe that the regulation precludes FERC from examining conduct within the one year period. And FERC didn't apply any sort of general policy or regulation in this case. They expressed significant concern in their order on rehearing that this, again, violated in their view the spirit of the Clean Water Act, but in their view it did not violate the letter of the Clean Water Act. Our argument is that interpretation in the order of rehearing actually is inconsistent with how the Clean Water Act works. Is it your even stronger argument that they acknowledge that what's going on here isn't in the public interest? That ought to have something to do with the way an agency interprets its statutes, don't you think? Absolutely, Your Honor. And, again, if FERC's regulations were interpreted as a bright-line rule to say that no matter what, we deem one year to be reasonable in all contexts, it would pose a very significant problem under both the Clean Water Act and the Federal Power Act. Because, for example, what if a state just hypothetically sent a letter in to FERC two months after an application and said, We refuse to process this application. We're not going to deny it. We're not going to issue it. But we're just letting you know that we refuse to process this application, and we are going to allow the licensee to resubmit its application on the 364th day from now until perpetuity. If FERC had a bright-line rule that said we will never examine what goes on within the one-year period, FERC, in that context, would never be able to obtain its real licensee. That's almost what happened here, isn't it? Yes. The state and state agency, the two state entities, were part of this agreement to do exactly what you just described, right? It was slightly less explicit than I described, but effectively that's exactly right. How do we understand the – why would it be better from a public interest perspective to have FERC order decommissioning as compared to having the relicensing corporation deal with it? Well, it's – I'm not sure that it is better or worse. I mean, the amended KHSA is not part of our suit. I recognize that. And we actually, the tribe, does not oppose that process because it's where it should be. It's before FERC. They have applied with FERC to transfer and surrender, and FERC is going to be the one that oversees it, and that's consistent with the federal licensing process. Now, whether that works or not, we're not sure, whether FERC will ultimately approve the transfer and surrender applications. But they are now, the way the process is working now, is they are back where they should be, as the federal licensing agency overseeing and making decisions as to whether transfer and surrender will occur, if they ultimately decide. But wouldn't the relief you're seeking kick a hole in that process? Because there's a pending application for relicensing of the whole project that's been put in abeyance, and there's pending application to have the license for half the project transferred over to the renewal corporation. And if on the first, FERC were to say the thing that's in abeyance, which is relicensing, FERC were to say, oh, states are out of the picture, they waived, let's go full speed ahead. With relicensing, then wouldn't that throw up the game board on the other strategy that the parties have been pursuing, which is a division of the license into two and an effort to transfer the decommissioning project to the renewal corporation? If this court were to vacate FERC's orders and send it back with a finding that FERC has authority to find waiver within one year, and perhaps the record clearly shows that waiver did occur in this case and the states are out of the picture, FERC would have authority to issue a new license for the project but no obligation to do so. FERC could still proceed ahead on its transfer and surrender process as it is now, which Petitioner actually is in support of. But that's a controversial process, and it's a unique process that hasn't occurred before. There's no guarantee that FERC will approve that. The benefit of having the states waive their certification authority is that if FERC ultimately decides that it cannot approve the transfer and surrender in the future, then at that time if the states have waived, FERC can then proceed in the public interest to relicense the project without having to go back to the states and potentially be subject to the same arrangement that they've been subject to for the past ten years where the proceeding drags on because of this withdrawal and resubmit process. So that's one of the primary reasons why this case is still very relevant and would not interfere with the ongoing transfer and surrender proceedings. On the legal question of how to read the Section 401 waiver circumstance, we're told that a majority of pending relicensings take much longer than a year. Is there authority for a state to apply to FERC for longer? If we were to say this withdrawal and resubmit ruse is just contrary to the statute, is the whole process going to grind to a halt? I mean, I realize that may be Congress's problem, not ours, but I'm just trying to understand the practicalities. It absolutely won't grind to a halt, and the FERC process is set up to accommodate just that. Under now the integrated licensing process at FERC, which is the default licensing process, studies on water quality and other issues begin years in advance of even a license application being submitted. In this case, water quality studies began six years before the first certification application was even submitted to the states. So, one, there's a built-in process way in advance of the one-year certification proceeding that allows for substantial work to be done. Second of all, if there is an actual need for more time, there is a process, and it's a process that was actually implemented under the amended KHSA, which is that if the licensee in the state truly needs more time to work out either a settlement or to work out issues related to the certification, they can ask FERC to put the relicensing in abeyance, and then the whole waiver issue goes away. But the benefit of that is that FERC is involved. Where is that authority? That was one of my questions, actually. FERC has. I can't cite you to the regulation, but FERC has authority. I can ask them. I mean, that's what they did in this case under the amended KHSA. And the benefit of that is that FERC regains its place at the table as the licensing authority. They're deciding whether or not to grant an abeyance if it's appropriate, and it also creates effectively an appealable decision that the public can participate in instead of having it be just solely with this agreement between the state and the licensee that neither FERC nor the public can participate in. Although everyone has to participate in the end, as you've said, when that's presented to FERC for final approval, you know, there's been a lot of negotiation, and then in order to actually go forward under the settlement, FERC has to approve the steps that the settlement contemplates, right? A decoupling of the upper part and the lower part of the project made into two licenses, transfer of the decommissioning to a new entity. Those are things that the public has to comment on and FERC has to approve, right? Under the current process under the amended KHSA, which FERC is overseeing, but one of the primary problems with the prior process, which we've challenged, is that the public was not involved. FERC was not involved and the public was not involved. The states and the licensee could have continued this process of withdraw and resubmit forever. That I understand, but once, let's say instead they had sought abeyance from FERC and FERC had put it in abeyance and said, work it out, guys. We'll give you a little while. And they had worked out the settlement. Even under the first settlement, at the end of the day, when they were happy with what it was they were planning to go forward with, they would have had to come to FERC to get approval, right? At the end of the day, and I get it. You're saying that's not good enough because it was all done in dark rooms? We're saying more than that. We're saying under the arrangement between the states and the licensee in this case, FERC and the public could have been cut out of the process forever. FERC would have never regained its licensing authority if it interprets the Clean Water Act that it can't do anything anymore. They could have done it forever. Assuming one step less Machiavellian activity on their part, that they actually wanted to do something, right? The citizens of the state are saying you need to move on this and the state is participating in a settlement process that it actually wants to conclude. If that settlement process did conclude, they couldn't go out and do the decommissioning and the continued operation without getting FERC's permission, right? I believe that scenario is right, but FERC would have never been able to relicense the project or impose conditions because they would have never had their authority to issue a new license.  But if you're still in this waiver world where the one year just keeps getting... I'm trying to understand the practicalities of this. Why is the state participating in this if they didn't need more time to actually come up with the clean water conditions? Why is it in their interest to have this up in the air and have their own people in their own environment subject to 1956 lax environmental conditions for more than a decade? I'll give them the benefit of the doubt. Maybe they thought that the settlement agreement would ultimately work, that 10 years of continued operation on the 1956 license was worth decommissioning in 2020. I don't know their motives, but I'll be willing to give them the benefit of the doubt on that, and I don't think it matters because the point is... Right. I understand that. I understand that. And isn't a big part of what's going on here a question of who's going to pay? I mean, isn't that the subtext of everything? Yes. It's one of the subtexts. I'm well in excess of my time, Your Honors, if there's no further questions. Okay. We'll give you some time back on your bill. We'll hear from the government now. Good morning. Good morning. I'm Carol Banta for the commission. I want to begin with why the commission interprets the act at the maximum one year. To be clear, and we do have a regulation, but the explanation is in the rulemakings behind that regulation. There was a rulemaking in 1987, and I don't know if we referenced it in this case, but it is referenced in, I believe, Central Vermont. No, Constitution Pipeline, which we mentioned in our supplemental brief. And it's also cited in the Ninth Circuit case in 1992, the State of California, XREL, California Water Resources Control Board. It was called Order 464, and the commission said, we interpret this, the Clean Water Act, at the maximum one year and not shorter, because we want to provide early certainty that everyone knows that it's a year. And the commission has later expounded on that in another rulemaking in 1992, which I think. What about 10 years, 12 years? Well, and that's where we'll get to the interpretation of the Clean Water Act, because the commission is, in accordance with the letter of the law, these are less than one year periods. But the commission itself has recognized the tension here. Oh, yeah. The commission has said, we're not happy about this. The commission has numerous times said, we disfavor the withdraw and refile. Now, the Second Circuit has actually said that that's fine. And this court saw it. Well, in dictum, in a case in which it wasn't really squarely at issue. I think it said it in, it was dictum in one case, and then it cited it more in another case that said you could actually do this. Regardless, the commission has never encouraged or endorsed it. Does not the statutory language of the reasonable period, which shall not exceed one year, imply the authority on the part of the agency to deem something unreasonable or find as a fact that a time period is unreasonable, which is less than one year? Yes, but the commission has said in its rulemakings, and it has talked about it. I know that, but the rulemakings, this is not a Chevron case. These rulemakings don't get different here, do they? No, but in interpreting how it's going to interpret the year, my understanding is. In interpreting the statute, we have to reinterpret it for ourselves. And if we think that FERC is wrong in saying that the one year is determinative as opposed to being simply a limitation, then shouldn't we send it back for FERC to reconsider under the proper interpretation of that law? I don't think so. My understanding is that the EPA has said. Well, you may not think so, but could you tell me why you don't think so? My understanding is that we didn't cite it. There's a regulation that says the certifying agency gets to decide what the reasonable period is. Now, the commission has said we don't want to go with anything less than a year because we don't want to create uncertainty. And in the Constitution order from 2018 that we cite in our supplemental brief, the commission said if we start going case by case to say, well, in this case something less than a year is reasonable, we create the exact kind of uncertainty that we're trying to prevent. What about in all kinds of different areas of the law the term reasonable being a case-by-case term? We adjudicate in the courts and in administrative agencies all the time the word reasonable as applied to the facts of the case. Now, does it not appear from the language of the statute that Congress contemplated that kind of adjudication when they put a limit on the end but not a limit on the beginning and left it open to the term reasonable that agencies would do precisely that, adjudicate the meaning of reasonable with respect to the facts before them? Well, I will say now the commission said in its order we, although we do think this is against the spirit of the law and the congressional intent, we do think we're complying with the letter of the law, which the court in cases like Alcoa and North Carolina has held us to. But the commission said in its rehearing order if the court wants to tell us we're wrong, I mean if the court wants to give FERC more authority, we generally don't say no to that, although I would imagine that defining what is reasonable case-by-case would create exactly the kind of uncertainty in litigation that the commission was trying to prevent. Ms. Banta, if we were to accept your view about the importance of working in the one-year unit for purposes of just clarity and notice and expectation, that doesn't really answer why FERC would take the position that the withdraw and resubmit is required by the statute. I mean as I read it, a state is deemed to waive its 401 certification authority if it fails or refuses to act on a request for certification within a reasonable period of time which shall not exceed one year after receipt of such request. Such request. Such request has not changed. Has it? Well, we don't know that. The request has been, hey, keep thinking about that request we sent you two years ago, three years ago, four years ago, five years ago. They have not acted within a year of receipt of that request, and I understand there's a formality of walking out the door and walking back in, but I'm just a little confused why everyone thinks that that language so clearly allows that. It really doesn't seem that clear. At least as a lawyer, I could argue to the contrary, and you have not. Right. And in the past, for instance, in the central Vermont case, parties were arguing to the commission that requiring you to actually take the request, because there they had an agreement to withdraw and resubmit and they missed one, and when they missed one and went over the year, the commission said, aha, now you've waived. And the state there said, well, this is overly formulistic and ministerial, and the commission said, that's what the statute says. This really is a case where we see a request and such request, and if a request is withdrawn before the one year passes, then such request is no longer pending and there's nothing to be acted on or not. When a lay person reads this or a lawyer, the overarching impression you get is that the states are in the driver's seat, they get a year to act, and if they don't act, things move on. Well, certainly. And that's the basic purpose. And then you read this language about a request, is it the same request, is it a different request. I mean, help me out here, because I seem to be taking the view that you're not, and I'm trying to understand why. And I understand your view, and it really is the agency trying not to be told by a court that a request and such request have meaning. But I would say certainly if an applicant makes a request and the state doesn't act on it, it does require both of them, and in many cases they aren't both going to have, sometimes the state. Fails or refuses to act is the language, isn't it, in the statute? I'm sorry, what? Fails or refuses to act. Is that language not in the statute? I don't have it in front of me. Well, refusing to act on a request that remains pending. If they have contracted not to act, isn't that a refusal to act? Well, the commission, looking at the statute, as long as there was not a request pending for a full year, the commission found that. The day the second one gets there, on the 365th or sixth day, gets there, and they've already contracted not to do anything about it, isn't that a refusal to act? I'm sorry, what? They've already entered that agreement not to act. Isn't that a refusal to act? Am I wrong that there was an agreement here where the state says we're not going to act? I think they did have an agreement between them not involving FERC to keep the clock ticking. But it did require both. I mean, it required both the applicant and the state to do that. But when did that happen? When did the state refuse to act? We know when it was. It was when the agreement was signed. In that agreement, they said, we refuse to act. And everything after that was just sort of formality. Well, they also agreed to keep what some people have called the formulistic and ministerial act of restarting the period. They did agree to do that. Let me ask you, if one were to read the statute as giving the states only the year and to disallow the withdrawal and resubmit of the exact same application, what would happen to the state's water quality? Could they still issue recommended water quality certifications? Would they be taken into account in the way that downstream states' information is taken into account? Or would they just be? I believe so. I believe it would be like the, I think it was the airport communities coalition case where, if I'm remembering the right one, where a state had acted, but then they tried to add conditions after the fact, and the Army Corps of Engineers took them on a discretionary basis rather than mandatory. But, and I mean, I would point, again, I find myself in the position of somehow defending something the commission has said we don't like. We just think it is under the letter of the law. But a state can block a licensing entirely by denying it. And what the commission has said, and I think maybe the commission would prefer over this withdrawing and refiling, if you're not done within the year, you deny without prejudice. Because then the licensing doesn't move forward until the state either waives or grants. A denial without prejudice is subject to appeal in state court? I don't know for sure. I don't, I assume. I don't know if the without prejudice versus with prejudice makes any difference in that. I don't know that. In terms of appealability or not? Yeah, I don't know that. Because the appeal would be as to the state. It would not be FERC's. Where is the, does FERC have authority to put a case in abeyance to, for example, permit a settlement to go forward? That's exactly what it did in June. I think when we filed the supplemental briefs, the motion was pending maybe, but it was. And the authority to do that is where? Oh, I don't know for sure, but I do have the order in which we did it. Okay, so it will just be cited in there. So, yeah. So, theoretically, if, I mean, it sounds like given the bulk of cases that have been pending from where certifications are being awaited for more than one year, 401 certifications, many, many, many cases, the states take more than a year. Can I interject a factual note on that? Yes. I'd like to update because the briefs are three years old. Because the commission actually maintains a list on its website. I'd be happy to give you the information or submit it in a letter if you want. The commission actually keeps a list open to the public on its website of the current certifications, hydro certifications that are awaiting either Clean Water Act or Endangered Species Act. In many cases, it's both. On the current list, the ones that are either Clean Water Act alone or both, there are 17. I think that's down from the 29 that was in the briefs three years ago or in the orders four years ago. And of the top four that were mentioned in a footnote, I think it's footnote 15 in the rehearing order, two of those are no longer on the list. One has been relicensed and one is moving forward. I think it either got or waived its certification, the state certification is moving forward. So it's not the same ones. I just wanted to bring that update. So, yes, the commission does, is concerned that there's a lot of delay and it keeps track of this list of the projects and the states and the federal resource services that are holding things up. But I did want to give that update. So it keeps track, but under FERC's legal view, it has no power to push them along, as long as they keep initiating a new request before that year runs. But if you look at central Vermont, I think it was five days after the year, and the commission said that's waiver. But, yeah, the commission does think that the letter of the law ties its hands on that. Again, given the state's power to block licensing entirely under the Clean Water Act, it does give states a great deal of power. And what's the situation with the upper part of this project? I understand that the relicensing for the whole project is in abeyance and that there is pending a question of whether the decommissioning can be transferred for the lower part. Is there any license pending for the second half of the original project that is broken in half? I believe that would remain under the original license, the one that the commission granted. I don't know if we want to call it seven or whatever. So it would just be the terms that relate to it. I believe it would be subject to relicensing. I do want to add another thing that happened that I think is referenced in the supplemental briefs but may have happened shortly after. The commission granted a motion to stay the effect of that March 2018 order so that Pacific Corp can keep operating the one license and not, in other words, the split is stayed unless and until there's a transfer to the renewal corp. So right now it continues to be one license. But my understanding, I think, is that Pacific Corp would continue to have a license as to it would be called the Klamath Project as opposed to the new lower Klamath Project. That's my understanding. And just, again, to understand practically what is going on on the ground, is this all about who pays and how do we even begin to understand the implications? I don't know if the commission is in a position to know that. I do know that the reason the commission didn't grant the transfer right away and is collecting more information is because the commission has to be comfortable that the renewal corporation is financially and technically, et cetera, capable of taking the transferred license. So the commission takes that responsibility very seriously. So as far as who pays in that regard. Anything else about the states? I mean, there are things in the record about bond approvals, but none of that really involved FERC. So I don't know that I can speak to it. Apart from putting a whole case in abeyance, is there a process for a state to request from FERC more time to process a 401 certification? No, I don't think so. Thank you. Thank you very much. Thank you for the additional time and rebuttal. I'll be brief. As I've said, I don't believe that the FERC regulations directly address our legal arguments. The FERC policy that was referenced by council related to when the one-year clock would commence, as opposed to when it would end. They were dealing with when they would deem an application submitted. So that was what they were talking about with the reliable, so everyone would know when the one-year clock started. I don't think it addressed the question that we're dealing with, is does FERC have authority to say when it ends if it's less than one year? Also, there's not been a case out there that's addressed this specific question. There's no specific circuit court authority on the arguments that we're presenting today, really one way or the other. There's been references to withdraw and submit in dicta, but there's been no approval one way or the other or disapproval in a circuit court. I would like to comment on why these hydroelectric relicensings often take so long. There's a significant financial incentive for the licensees if these certification proceedings and the relicensings drag on. The licensee gets to operate on the terms and conditions, plus maybe some others that it agrees to, for the entire time that the relicensing drags on. I think there was evidence cited in the record in this case that that was worth $27 million a year to the licensee in this case. So the licensees, while it's the states that have the critical authority, there is a significant push by the licensees to make these proceedings drag out, and I think it's important background. On the other hand, they have a very mixed interest in the validity or not of withdraw and resubmit because here they get automatic licensure under their antique license, which is in their favor, but in a case in which they're trying to get a new project licensed to support the withdraw and resubmit notion, if they don't have a license and they want processing to go forward, the states can hold them up indefinitely by the same mechanism, no? That obviously is not the case we're dealing with here. No, it's not, but I'm just curious about it. Those issues do not come up as frequently. I think if you'll look at the number of cases where there's been this extended time period, I would submit the vast majority of them, if not all, are in cases involving relicensings, where there's existing projects in the ground, not in cases where there's a new application for a project where the dynamics, as you mentioned, are entirely different. I'm over my time again, unless there's another question. Thank you. The case is submitted. Thank you. Stand, please. This audit report now stands adjourned until Wednesday morning at 9.30 a.m. Thank you.
judges: Griffith, Pillad, Sentelle